I now hear argument in Government of Virgin Islands v. Muiruri Mr. Guzman Good morning, Adam Guzman on behalf of the appellant Swale Muiruri I request to reserve three minutes for rebuttal Granted May it please the court My client Swale Muiruri is serving a 30 year sentence He was convicted of several counts and also acquitted of several counts Stemming from an incident back in 2000 Mr. Muiruri's conviction should be reversed and remanded for further proceedings Because the trial court erred in admitting three separate pieces of hearsay evidence Which were inadmissible and thereby bolstered and lent false credence to the complaining witness' testimony Which we submit resulted in a high probability that Mr. Muiruri's trial rights were substantially affected Let me hone in on a couple of things here First, parenthetically, it took the appellate division seven years to decide this case, didn't it? Yes, Your Honor Your client serving a 30 year sentence in this case was before the appellate division for seven years That concerns me as well, Your Honor He's already served eight years of his sentence Served eight years of his sentence And those are years that if we were to agree with you, he doesn't get back At least if he's not convicted on a retrial Just before Judge Perry continues, why weren't they mandamus or something? I mean, is there any reason why it took that long and there was no I'm not saying mandamus, but there should have been something done? It's a good question, Your Honor Just to explain, there was an attorney who represented the appellant in the trial court who was later disbarred Disbarred, Mr. Bush Correct Yes So what happened, I think the appellate division, things do tend to languish there Combined with the fact that Mr. Bush was no longer authorized to practice law We were appointed in July 2008 Is that when you were appointed, just then? Yes, Your Honor No one is blaming you at all I'm just wondering when I read this and I saw what Judge Perry indicated Why a mandamus petition was not filed with this court? I share your concerns, Your Honor Believe me, that was my client's first question when I called him in his prison He wanted to know why he was languishing without a retrial We may have more to say about this But let's bring this back There is one question There is one bottom line question in this case Was the sex consensual, right? Correct, that is the key issue in the case It's the proverbial he said, she said That's it I agree Please go ahead Go ahead Well, I think the reason, and this gets into reversible error Which I think, I mean, obviously we have to establish that it's hearsay first I think we've done that in the briefs But once you've established that inadmissible hearsay was admitted Of course then the issue becomes reversible error I would submit that in a case like this Where the hearsay really went to the key issue in the case Which here is whether the sex was consensual That you have reversible error What's wrong with the appellate division's conclusion that it was error but it was harmless? Well, I think there's several factors The first is It's not from the standard of review they use but Well, it can't be several factors Because the appellate division dealt with it in one sentence Well, again, Your Honor That's it Your Honor And it was at the tail end of the opinion About what I consider to be the most important argument you can make Which is the 15-page victim statement to Detective Bedminster But they dealt with that in one sentence Yes, Your Honor I believe the appellate division's analysis was lacking in a couple areas There was no analysis Well, from your standpoint When was her Exactly her motive to fabricate When did it arise? The motive to fabricate based on this record I believe that a reasonable person can only come to one conclusion Which is it's difficult to pinpoint the exact time that the motive to fabricate arose There's case law that says we need not pinpoint Well, you have to look at it from her point of view She alleged she had been raped Then when did the motive to fabricate arise Since she wants her husband to think that she's been raped and not had consensual sex I would submit, Your Honor, that at the latest The motive to fabricate arose when she was dropped off in front of her condominium complex And she then proceeded to allege that she was raped Which was prior to her 15-page statement ten hours later It was approximately nine to ten hours before she gave a statement to police So, therefore, as I think we've indicated and proved The motive to fabricate arose before And, therefore, the statement which was offered only Admissible only on the basis that it was to rebut the fabrication Is inadmissible under the Supreme Court case of Tome Neither the district court nor the appellate division dealt with the timeliness requirement That's correct, and I think this case provides an opportunity for this court To remind the trial courts in our jurisdiction that they need They're required to at least make factual finding That the motive to fabricate does not predate the statement sought to be admitted They need not pinpoint the exact time Because that can be very difficult But in United States v. Frazier This court indicated that the district court has to make that threshold inquiry Well, the law is very clear I don't know if we have to remind them The law was very clear, they just didn't apply it here Yeah, what was unclear about the law? To me, that law has been in my mind for 30-some odd years Well A consistent statement is inadmissible If the motive to fabricate had been made prior to the consistent statement Well, I think we all are in agreement on that However, the appellate division did not find that Well, what's wrong with the government's position is that that was not the time When she made this statement, she had no motive to fabricate That it was not hearsay Well, the record contains no plausible alternative, I would suggest, Your Honor For when a motive could have arisen later Or after the statement she gave to police the following day Remember that this incident occurred in the immediate aftermath of a fight A quarrel, let's say, between the victim and her husband She stormed out of the bar And then this incident occurred She admitted at trial her testimony She admitted that she was angry with him She admitted that she was hoping that he would come apologize to her But he did not do so I would argue her motive to fabricate arose as early as that Even without all that, isn't your position really putting a black-letter rule into effect That says that anyone who is married Or perhaps even has a monogamous relationship with someone who's not a spouse Would always have a motive to lie when they're caught having sex of some kind, consensual or not With someone other than their betrothed Well, I hadn't considered it that broadly, Your Honor But I think the important point here is just that Yes, if that means that there's a per se rule that you can't then use a 15-page police statement To bolster your allegations because you had a motive to fabricate I think that's what the case law requires But moving on to the statement by Agent Harkin Wasn't he just describing what D.F. said in a way of He's just giving a recapitulation, so to speak Well, the argument by the government is that it's merely cumulative of testimony that the victim herself gave But I think we have to be very careful It's a one-on-one where it's he said, she said Correct Every time you bolster one side Even with, I don't think the Harkins She had to have told Harkin where she had been at a particular point Because Harkin wouldn't otherwise have known how to get there Correct So it's bolstering her But the location of where these events occurred The five alleged rapes It's not really in dispute It's just whether the sex was consensual, right? I understand So the Harkin in and of itself isn't prejudicial Well, I believe it is because I mean, not with a capital P Not like the Bedminster one I agree that there are levels of prejudice And certainly the Agent Harkin would probably be the least prejudicial of the three However, she went beyond giving mere location And actually started describing how the victim fell here The victim was attacked here Yeah, but didn't Harkin just sort of regurgitate what she had already told him? Just to repeat, he didn't add anything to it He just sort of But Your Honor, I would suggest that then if it was simply regurgitation It certainly should not come in because it You have the victim there to testify in person And that's the purpose of the hearsay rule He's bootstrapping her testimony He's bootstrapping And in United States v. Salins Which I think the court has already kind of spoken on this issue We have to be very careful that we don't let background evidence By police arriving on the scene Become, you know, admissible Just as an end around the hearsay rule And that's what I think happened There was no dispute I mean, the question is Whether she was lying or whether he was lying You don't dispute the place this occurred And the facts that Harkin I think Agent Harker actually elicited facts That went beyond the mere location She actually said the victim fell here The victim, you know And so I think it went beyond just the mere location It also would be minimally probative And highly prejudicial under 403 as well I would like to just address, you know, reversible error Because we can talk about the last statement maybe on rebuttal But I think the evidence was far from overwhelming against my client It was basically a he said, she said The jury's verdict was split How did it split? That's a nice way of describing it I don't know how you can explain the jury's verdict It was inconsistent, Your Honor, exactly It was either jury nullification or a compromise verdict I think they may have thought the government overcharged Which in my simple opinion it did There's no explanation This verdict, at least to me, is inexplicable But if there's no evidentiary reversible error The verdict must stand Even though it is inconsistent You agree with that I understand that an inconsistent verdict in itself is not grounds for reversal But when it comes to reversible error You have to look at the inconsistency of the verdict Because you have to determine whether the outcome was swayed And here I would argue that it's highly probable that it was swayed Because not only was the jury verdict split Or even inconsistent, as Your Honor says No limiting instruction was given for any of this information The government claims Well, some of these things were not offered for the truth of the matter asserted Well, that's nice if that's true I don't believe it is But even if it is true There was no limiting instruction given Therefore, we can't assume that the jury just ignored the inadmissible parts And based its verdict on the admissible parts I'm out of time But I do have just a couple more points Well, why don't you make them I mean, I think we'll run a little longer And this is a very important case Maybe you could clear up for me Hawkins is just – he didn't really add that much to the mix Use your best arguments It's not Hawkins I think that question implies an argument I understand There's Agent Harker And then there's John Hawkins Hawkins That's why we made Talking about the statement the guard made to Hawkins That she was raped Told her husband she'd been raped That he went to the hospital Right, right I mean, how much – what consequence is that? Well, I think that the hearsay was admitted on the key issue in the case, as I said And the jury rejected the victim's allegations about gun possession, okay? And so we see that the jury saw through that But they actually convicted him on the rape charges Which is the very subject of the improper bolstering That the testimony of Agent Harker and John Hawkins was He acquitted him on first-degree rape on – in the backseat of the car He was acquitted on that one Correct Now, look, the last statement, the guard He just is relaying that she told him she was raped when she was dropped off I don't – I wouldn't waste your time on that, frankly, speaking only for myself That explains why the husband stopped searching for her It's not offered to prove the truth of the matter asserted Okay, Your Honor Right? It's offered to prove why the husband stopped looking for her But why was that an issue in the case? That's not – it's not relevant to any issue in the case, why he stopped looking for her You know, who knows? The jury could have been back in the jury room just looking through her allegations one by one That should never have been submitted to the jury So we're left with what I believe is reversible error What they had with that 15-page statement that the victim gave to Detective Bedminster Was a written record of the victim's oral testimony Correct Word for word The same events in written form Correct In the jury room With the – So it had the victim testifying twice That's correct, Your Honor And something that they can look at And interesting, the jury called for the other police and the other statements So they were looking at these statements Yes, exactly The record indicates that they were considering the statement which was inadmissible hearsay Which, again, goes to reversible error It would also go, in my view And this will be the first question to the United States Attorney Which I'm sure that will be anticipated Is how can this possibly be harmless error In a one – again, a one-on-one case Yes We'll get you back to me, Barbara Thank you, Your Honor Good morning Ms. Robinson If it pleases the Court My name is Jason Robinson And I represent the people of the Virgin Islands Let's assume the 15-page statement was admitted in error How can you seriously argue that it's highly probable That that error did not contribute to the judgment? The jury had the opportunity to observe the victim And to determine her credibility at the time of the hearing They were able to discern whether or not Any of the other photographs of her injuries The medical records supported the representations that she made To the trial court and to the jury And the court and the jury was able to consider those factors And I believe that that would have been sufficient To find the defendant guilty Well, that was a standard that the appellate division wrongly used That there was sufficient evidence to convict Even if there were errors But that's not I don't think that's Judge Barry's question The question to you is If this is a prior consistent statement Which is hearsay How can the jury, considering that information Be said to result in a verdict Where it's highly probable That it had no effect on their decision Well, I think the jury had to In considering the charge of recent fabrication The jury looked at the statement For the purpose that it was submitted To demonstrate that the victim did not fabricate The fact that she had unconsensual sex with the appellant You don't determine when the fabrication arose By looking at the statement that was given You determine whether At what period of time there's a motive to fabricate And I would submit that the appellant hasn't demonstrated Or even stated to this court That there was a motive to fabricate The appellant states that The victim wanted to garner sympathy from her husband Because they had a premarital spat at a bar And, you know, she wanted to conceal  However, immediately after leaving the appellant's company She ran to the security guard And asked to have her husband contacted And have the police contacted Because she was raped After having said, admitted she had said That it was the best sex I ever had It was a lovely evening You're saying, I'm confused You're saying she had no motive to lie? I'm saying she had no motive to lie at the time You think her husband would have been happy with her Had she come home that night and said Hey, I just spent an hour or two with some other guy I don't think any husband would be happy with that He knocked her around pretty good anyway So isn't it obvious that she has a motive to lie? I don't think she has a motive to lie She testified in court that She told the appellant, I don't want my husband to know She also testified that she didn't want the police to know I don't think that a person Two consenting adults need to worry about getting in trouble If they have sex And in this case Well, wait a minute Two consenting adults, one of whom is a wife Goes home to her husband The testimony is they had a lot of fights And she had some bruises on her There is a big question in my mind Where these scrapes came from But that's a whole other question Which I'll get to in a couple of minutes But just because two adults have consensual sex Means there's no motive to lie She goes home to this husband After just describing this as the best sex I ever had And she's going to say, guess what, Joe I just had the best sex I ever had Right? Is that believable? Is that even I can't even comprehend that She's going to go home I've been raped Right? I agree with you I would submit that if the appellant had consensual sex She would have a motive to lie However, at the time when she stated to the appellant When did it start? When did she first have that motive to lie? The moment she hit that guardhouse, right? What am I going to say now? Wow, here I am She did not have a motive to lie When she hit the guardhouse The appellant doesn't contend In his papers As soon as she arrived at the guardhouse Yes, he does Yes, he does When the court asked him During oral argument He said he couldn't pinpoint it to a specific time However, in his briefs He stated that It arose sometime after speaking to the guard And sometime before But before Speaking to the police Before 10 hours Whatever moment it was 10 hours before she gave the statement to the police But there's no support in the record that She intended to She did not want If she intended her Let me say it this way If she intended that her husband not find out She need not go to the guard Who didn't see Who wouldn't have to Take down the license plate number And call the police And notify the police that she was raped This is a gated community Yes, your honor The guard knows Who she's supposed to be coming home with The guard sees her in a car That's not her husband's car It's not her car With a different man I don't think that He can presume that the person is not Is a sexual Someone she's having a tryst with I would submit that Someone could get a ride home from a friend May be true But when husband comes home At a different hour And we know from the record That the husband and the wife had an argument And if she left the bar And her husband was looking for her And she wasn't in the company of her husband Every time they went back to the condominium To look for her The guard might assume Okay, she's not getting a ride home from her husband He's obviously looking for her Another friend could have dropped her off They wouldn't automatically presume That she's having a tryst with the person who drops her off And I would submit that Even though she told the appellant That she did not want her husband to find out She also stated that she didn't want the police To find out If she just wanted to conceal it from her husband Why would she even mention That she didn't want the police to find out So he wouldn't get in trouble Let's move back to really where I think we should be It is your burden Let's assume Let's assume we have a great deal of problems With this 15-page statement Which bootstraps her testimony in written form For the jury to read No? In a case where it's his word against her word It is your burden Not the defendant's burden It is your burden To show that the admission of that statement Was harmless error How is it harmless? I would submit that the jury As I stated earlier Was able to consider the testimony of the witness On the witness stand But it rejected the testimony of the witness By finding him not guilty of count one Not guilty of count two Not guilty of third degree rape in count four Not guilty of first degree rape in count five Not guilty of first degree rape in count nine It rejected her testimony But it did not reject her testimony With respect to two counts of first degree rape And unlawful sexual contact How can you say it's harmless error then As to those counts? How? Well the jury was able to discern What information it felt was more credible than not Based upon the instructions that the court Gave to the jury Let me ask something A little bit even more basic Than what Judge Barry just posed Under the statement This fifteen page written statement Is hearsay It was made Was not made in court by the declarant It was made out of court And under 801 D Whatever it is I can't remember It is not allowed to go into evidence Unless you prove Not the defendant disprove Unless the government proves That there was no At the time the statement was made Motive to fabricate Correct? Correct your honor Okay As I hear your position on that Statement Your position is that The jury heard him and her And they determined Whether or not she had A motive to fabricate Is that your position? No I'm submitting that The testimony elicited from the witness With respect to Why she said Some of the things That she said during the rape She said that she Liked the appellant She talked dirty to him Because he wanted her to These are all things that she did Not because he wanted her to But because she learned That you're supposed to talk dirty When you're being raped She was a psychiatric nurse And during her rotation She learned to appeal You had her story down pat Okay but My question to you is this It seems to be your position That it's the jury's Determination as to when There was a motive to fabricate No I'm saying that The government established Through her testimony That she did not have a motive Did not have a Oh your position is And they established it what Through her testimony Yes your honor Oh well because The way I read these cases I understand it to be A question of law As to when For the trial judge to determine As a matter of law Whether to admit An 801 statement And he determines Whether at the time The statement was made There was or was not A motive to fabricate And I don't see how You can read the cases Any other way It's a question of law In this case your honor The court reserved ruling On whether or not to admit Well the court Cannot reserve ruling On that The court must rule first And not admit the 801 Consistent statement If there's a motive To fabricate And the court determines Whether at the time The consistent statement was made There was a fabrication motive The court prior to admitting Prior to admitting The report The court considered The arguments of the parties And considered the evidence Before and at the outset The court reserved ruling On its admission Considered the testimony Of the victim And considered the arguments Made by the party Before ruling on the motion No No the court The court reconsidered The court reserved And a couple of pages later Reconsidered its ruling And it never found When her motive to fabricate Never dealt with it It never It never Never made a claim It never ruled The crucial 801D Question of law It's not for the Attorneys or the juries To determine When that Motive to fabricate arose It's for the judge to make it And he let this Consistent statement in Without ever ruling As to whether or not It was a permissible Hearsay under 801 As far as My research was the same The ruling was actually Very very unclear But one thing that is clear Is he never dealt with The temporal requirement Of the rule Let me move for a moment To the physical testimony Question It was unclear to me Because we don't have All the exhibits G1 to G13 Were admitted in evidence Those are the photographs Of the injuries, correct? Yeah All of those photographs Were not taken at the hospital Were they? I believe it was taken At the police station Pardon me? I'm not sure if it was taken At the police station Some of them were taken Even by the husband Or taken in the home I think that's correct A couple of them Three of them Four of them But all right Dr. Ruvivas The medical examiner Testified He also had done a sketch Of the injuries He saw And he talked about Abrasions of In a few places Of one to two centimeters Correct? Yes That's like tiny Right? I come from the generation We talked in terms of inches I don't know what a But I think a centimeter Is very small These are not Her testimony is Bruised, great, terrible injuries But the doctor's testimony Didn't make it sound As grievous as she did I'm not saying I disbelieve her Or whatever But that's the doctor's testimony Correct? Yes sir And he did a sketch Or one of those little Straw man things And he had The few injuries he saw Indicated And they don't bear An awful lot of relation To the injuries To which she testified But you charged You with the government Of the Virgin Islands Charged this defendant With five rapes And the doctor's testimony Is there were absolutely There was no injuries No bruising No blood Vaginally So this doctor Did not see You would agree with me Injuries that would be Consistent with her testimony Would you agree with that? Well she did not I don't think she Discussed the extent Of her internal injury But she was examined She was examined By him? Yes your honor Okay And I would submit That the trial court Did not earn Admitting the testimony Of Agent Harker With respect to the background The background investigation The testimony by Agent Harker Was limited to the locations That she went to To inspect Investigate the scene Yeah but didn't that Bolster her Testimony All of us are taught In trial practice That with a police officer You say the officer Is supposed to respond Based on information Received from me I did the following Which I did You don't have the police officer Say verbatim What the witness Has already related To the officer Since that's Clearly hearsay What the victim Tells the police officer What's evidential Is what the police officer does And there's a case The Price case is right on this Saying that this Recitation by an Investigating officer Rotely Of the information Relayed by the victim Is clearly hearsay It's not testimony In court of what occurred It's what was told To the officer And doesn't that Consistent statement That he That the Government used Bolster her initial Testimony by stating The same thing again Agent Harker didn't testify That the Appellant was raped And how the appellant was raped She only testified as to the locations That the victim showed her Where she was in fact raped And the court gave a limiting instruction To agent Harker In recounting the actions That she took that she should limit it to Where she went and not what the Victim told her And I believe Price also stands for the proposition I don't think there was an appropriate limiting instruction here Not stating what the Usual rule concerning Prior consistent statements No I'm saying With respect to agent Harker's statement The trial court Directed agent Harker to limit her comments To those which State where she went and not To repeat what the victim told her And I believe that Price also stands for the Proposition that when the explanation Cannot be effectuated without relaying some Contents of the information received Salins does not prohibit the emission of such Details and to the extent that she stated that The victim accompanied me to Vesa Cabrinha Point Road Vesa Beach and Cabrinha Point Road It was not Improper and to the extent that The information was here I would say that That because it was Cumulative of the Statements presented by Cumulative In the sense that the victim stated that She went to Cabrinha Point and Vesa Beach To the extent that It is cumulative of the victim's statements As to where she went when she was raped I would say that it's a harmless error Well that's not the rule for harmless error That's cumulative of what was already before the jury The rule is whether that statement Is highly Probable that it had no Effect on the jury Verdict and To me the police Officer during the investigation Recounting The place where she was raped And other details as well Which was related To her by the victim Is In a Close case, this obviously was a close case As Judge Barry said It's he said she said These Little Evidence violations Could play a heavy toll Can't they? It can your honor in certain cases How can you say that it's highly probable That the statement by Agent Harkert Had no effect on This jury's mind The jury was not required to Only take the testimony of Agent Harkert That the victim was raped at Vesap Beach and Cabrita Point Road The jury also had the testimony Of the victim And the 15 page statement of the victim To Defective Bedminster And the victim also had that Yes your honor This court has stated that When improperly admitted hearsay evidence Is cumulative of other properly Admitted evidence it is A harmless error I think I understand your definition Of cumulative This case was tried In October 2001 There is no Way to effectively retry it Depending on what we decide Is there Is there a way to effectively retry it I don't know How the government has You know Maintained the evidence I would imagine that it's only been 8 years Only been 8 years I'm sorry when I say that I mean that It hasn't been a 20 year case where Evidence is probably destroyed or unavailable Or that the witnesses are unavailable To testify You really have one witness here Yes your honor Okay alright let's get rebuttaled And see where we go on that Thank you Briefly your honors It's baseball season Mr. Guzman We've thrown a lot of them right over the plate for you Right I appreciate that It's my first time before the court So I appreciate that Your first time Yes Before the third circuit It's a privilege Okay well the government suggests That a limiting instruction was given Obviously I just want to clarify That no limiting instruction was given to the jury Which is the important For Harker For any of these three your honor There was no limiting instruction given to the jury Now I looked through the record And I didn't see that one was requested But that's a different issue Once you find that it was improperly Admitted then you look at Not whether an instruction was admitted But whether an instruction cured The problem Judge Hodge did Direct Agent Harker To not direct her testimony To what the victim told her But Agent Harker could not help herself And continually kept coming back to Well based on what the victim told me Okay Salins stands for the proposition That you shouldn't even get to that point Salins dealt with the issue of Whether an officer can relay as background information How they arrive on the scene Okay that wasn't even at issue In Agent Harker's situation We understood how she arrived at the scene She should have just said Based on information received I went to investigate Vessa Beach And Cabrita Point Road She then went on to elicit further information So the suggestion that it is cumulative Is not correct Because it actually Was not Just Identical to what The victim had testified to It was actually bolstering her testimony You mentioned the physical evidence The physical evidence In this case is far from overwhelming In fact There were some bruises On her body but of course The victim testified that Testified that she told The alleged perpetrator Of this crime that he was more gentle During lovemaking than her own husband I would submit that That may have been a ploy To try to appease her attacker But with some of the Comments that she made I don't want to get too graphic but it's in the brief She even instructed him how to proceed So that he could achieve Deeper penetration She learned that And she's a nurse That's her story and she was sticking to it As you said your honor She had her story down pat And she stuck to what was in that Written statement Which she gave to the police I just want to close by saying With agent Harker The background evidence Is always a post hoc justification For what you can offer at trial But Salen says the duty of this court Is to carefully scrutinize The actual evidentiary value Of such evidence and see whether It really serves any legitimate Non-hearsay function And if the legitimate non-hearsay Probative value is de minimis Then you have to exclude it Thank you very much We will take the case under advisement I cannot speak for my Colleagues but speaking Only for myself There will be a decision out Whatever it will be We have not conferenced the case yet Obviously In very Due course It certainly will not take seven months Or seven years I hope to get Something out to you very promptly Thank you very much